**12-713-cv**
*Stansbury v. Wertman*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

───────────────

August Term, 2012

(Argued: March 11, 2013      Decided: June 26, 2013)

Docket No. 12-713-cv

───────────────

LINDA STANSBURY,

*Plaintiff-Appellee*,

-v.-

CHAD WERTMAN,

*Defendant-Appellant,*

JOSEPH LUTZ AND JOHN DOES 1 THROUGH 10,

*Defendants.*[*]

───────────────

Before:
        WALKER, SACK, AND WESLEY, *Circuit Judges.*


───────────────


Plaintiff-Appellee Linda Stansbury initiated this action in
the United States District Court for the Southern District
of New York (Holwell, *Judge*) pursuant to 42 U.S.C. § 1983
alleging false arrest and malicious prosecution.  Defendant-

─────────────

[*] The Clerk of the Court is directed to amend the
caption in the case to conform with the above.

1

Appellant Chad Wertman moved for summary judgment, asserting that (1) there was probable cause for the arrest and prosecution, or, in the alternative that (2) he was entitled to qualified immunity based on the existence of arguable probable cause. Defendant timely appeals from the district court's January 24, 2012 opinion and order denying Defendant's motion for summary judgment. We find that the district court erred by analyzing the evidence *seriatim* and in isolation. In its totality, the evidence provided Defendant with probable cause to arrest and prosecute Plaintiff; we therefore hold that Defendant is entitled to judgment as a matter of law and REVERSE the judgment of the district court and REMAND with instruction to enter judgment in favor of Wertman.

REVERSED and REMANDED with instruction to enter judgment in favor of Wertman.

---

SUDARSANA SRINIVASAN, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Cecelia C. Chang, Deputy Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, NY, *for Appellant Chad Wertman.*

RANDOLPH M. McLAUGHLIN (Jeffrey M. Norton, *on the brief*), Newman Ferrara LLP, New York, NY, *for Appellee Linda Stansbury.*

---

WESLEY, *Circuit Judge*:

Chad Wertman ("Wertman") appeals from the January 24, 2012 opinion and order of the United States District Court for the Southern District of New York (Holwell, *J.*) denying Wertman's motion for summary judgment. Linda Stansbury

("Stansbury") brought this action pursuant to 42 U.S.C. § 1983 alleging false arrest and malicious prosecution. Wertman moved for summary judgment, asserting that (1) there was probable cause for the arrest and prosecution, or, in the alternative that (2) he was entitled to qualified immunity based on the existence of arguable probable cause.

The district court analyzed each piece of evidence in the case *seriatim* and in isolation and concluded that there was a genuine issue of material fact as to whether Wertman had probable cause or arguable probable cause to arrest Stansbury.  This was error.  Analyzing the evidence in its totality, we hold that no reasonable trier of fact could conclude that Wertman did not have probable cause to arrest and to prosecute Stansbury.  We therefore reverse the district court's opinion and remand the case with instructions to enter judgment for Wertman.

**Background**

At 8:30 p.m. on April 4, 2006, a woman shoplifted approximately $800 of goods from a Stop & Shop supermarket in Somers, New York.  Mary Sue Cirrincione ("Cirrincione"), the store detective who was trained "to focus on distinctive facial characteristics," observed the crime on the store's

three-inch by five-inch monitor.  Cirrincione Decl.; *see also Stansbury v. Wertman,* No. 09-cv-04638-RJH, 2012 WL 183849 at *1 (S.D.N.Y. Jan. 24, 2012).  Cirrincione alerted co-worker Mark John ("John"), who physically observed the perpetrator and watched her open tightly-folded, crisp, new Old Navy bags and place items from the shelves into the bags and then in her shopping cart.  *Id.*  When she tried to leave, John attempted to block the perpetrator's exit and asked to see her receipt; she ran around him, exited the building, and jumped into a white van.  *Id.*  John noted the van's license plate number as it drove away.  *Id.*

Cirrincione and John reported the incident to the police, and New York State Trooper Chad Wertman arrived to investigate.  Wertman recovered a bus receipt from an Old Navy bag the perpetrator had left behind.  He watched the videotape of the theft and took the tape as evidence.  Cirrincione and John both described the perpetrator as a "black female wearing blue jeans and a maroon windbreaker;" John added that she was "about 5'5"."  *Id.*  The bus ticket and license plate number did not yield any additional leads.

Noting that the perpetrator's Old Navy bags were in mint condition, Wertman traveled to one of the two nearby

4

Old Navy stores. The Old Navy manager reported that a middle-aged black woman had attempted to buy some clothing at the store at 8:08 p.m. that evening, but that her credit card was declined. The manager reported that new bags, typically stored in the rear of the store, were discovered strewn on the ground near the door around the same time. *Id.* at *2. Wertman traced the credit card receipt to a card belonging to Nicole Stansbury ("Nicole"), Linda Stansbury's daughter. After repeated attempts, Wertman was able to contact Nicole by telephone; she alleged that she had been in Old Navy on April 4 before visiting an A&P supermarket and returning to her mother's house.

Wertman went to Stansbury's house on May 22 to interview Nicole. Wertman asserts that on his arrival, "he recognized Linda Stansbury as the perpetrator he had seen on the videotape." *Id.* He interviewed both women, but his "notes of the interview reflect that Linda was nervous, that she would not answer his questions directly, and that Nicole answered many of the questions he asked of her mother." *Id.*

After the interview, Wertman reviewed Stansbury's criminal history and discovered an arrest for grand larceny. He then obtained a DMV photograph of Stansbury and asked

5

another trooper to prepare a photo array. Before the array was complete, Wertman and two senior officers reviewed the videotape, compared it to the DMV photograph and confirmed their collective belief that Stansbury was the perpetrator.

Wertman scheduled a follow-up interview with Linda and Nicole Stansbury at the police barracks in Somers. He planned to have Cirrincione and John come to the station and view Linda Stansbury to see if they could identify her as the shoplifter; the Stansburys never arrived. *Id.* at *3. Because the photo array was not yet ready, Wertman showed Stansbury's DMV photograph to Cirrincione and John without any control photographs, in violation of the New York State Police Field Manual ("Field Manual").[1] Both Cirrincione and John identified Stansbury as the perpetrator and signed a sworn statement under penalty of perjury to that effect. Cirrincione confirmed "without any doubt or reservation" that Stansbury was the perpetrator, and John "was positively without a doubt able to identify" her as the thief. After Wertman spoke with her attorney, Stansbury turned herself in the next day; she was listed as 5'9" tall upon arrest.

---

[1] The Field Manual instructs officers to "NEVER show a single photo of a suspect to a witness." It also instructs officers to separate witnesses when showing them photographs of the suspect and to consult the district attorney's office before conducting a photo array with fewer than six photographs included thereon.

Stansbury was tried for petit larceny in Somers Town Court. After a two-day bench trial including testimony by Cirrincione and John, Stansbury was acquitted. Two years later she commenced this suit, alleging false arrest and malicious prosecution under 42 U.S.C. § 1983. Wertman moved for summary judgment; finding "genuine issues of material fact with respect to probable cause," the district court denied his motion in January 2012. *Id*. at *9. Wertman timely filed this appeal.

## Discussion

**I.  Jurisdiction and Standard of Review**

This Court has jurisdiction to hear interlocutory appeals of denials of motions for summary judgment where the motion is predicated in whole or in part on assertions of qualified immunity. *See, e.g., Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010). Wertman alleges both that he is entitled to qualified immunity based on the existence of arguable probable cause and that he is entitled to judgment as a matter of law based on the existence of probable cause.

We may exercise pendent jurisdiction to decide whether Stansbury "has alleged a constitutional violation at all"

before deciding whether Wertman is shielded by qualified immunity. *Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009). Although it is no longer required, *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the probable cause inquiry may precede any inquiry into qualified immunity because there cannot be an allegation of a constitutional violation where probable cause justifies an arrest and prosecution. *Panetta v. Crowley*, 460 F.3d 388, 394-95 (2d Cir. 2006). In this case, it is "beneficial," *Pearson*, 555 U.S. at 236, to first address whether Wertman had probable cause, because it best serves the interests of judicial economy, *see Escalera v. Lunn,* 361 F.3d 737, 749 (2d Cir. 2004). Thus, because the probable cause inquiry is inextricably intertwined with the immunity question, we will exercise our "discretion[] [to] consider otherwise nonappealable issues" based on our review of the question of qualified immunity. *San Filippo v. U.S. Trust Co. Of N.Y., Inc.*, 737 F.2d 246, 255 (2d Cir. 1984); *see also Golino v. City of New Haven*, 950 F.2d 864, 868-69 (2d Cir. 1991).

The standard of review here is well-established.[2] We

---

[2] We review denials of summary judgment *de novo*, construing "all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [her] favor." *Amore v. Novarro*, 624 F.3d 522, 529 (2d Cir. 2010).

conclude that Wertman had both probable cause and arguable probable cause to arrest and prosecute Stansbury; the district erred in denying Wertman's motion for summary judgment as to the false arrest and malicious prosecution claims.

**II.  False Arrest**

"'[P]robable cause is an absolute defense to a false arrest claim.'"  *Torraco v. Port Auth. of N.Y. and N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (quoting *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006)).  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime."  *Jaegly*, 439 F.3d at 152.  A court "must consider [only] those facts available to the officer at the time of the arrest and immediately before it."  *Panetta*, 460 F.3d at 395 (internal quotation marks and emphasis omitted).  A court examines each piece of evidence and considers  its probative value, and then "look[s] to the totality of the circumstances" to evaluate whether there was probable cause to arrest and prosecute the plaintiff.  *Id.* (quotation marks

9

omitted).  If probable cause existed, it presents a total defense to Stansbury's actions for false arrest and malicious prosecution; Wertman would be entitled to judgment as a matter of law.  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).[3]

**A.   Available Evidence as to Probable Cause[4]**

The district court analyzed five separate pieces of evidence before concluding that Wertman was not entitled to a probable cause determination:

> (1) Cirrincione's and John's eyewitness accounts of the shoplifting; (2) the store surveillance tape; (3) [Wertman's] identification of Stansbury as the perpetrator on the surveillance tape; (4) [other officers'] opinion[s] that Stansbury's DMV picture matched the perpetrator depicted on the surveillance tape; and (5) Cirrincione's and John's photo identification.

*Stansbury*, 2012 WL 183849, at *4.  The record also includes uncontested evidence that the district court chose not to

---

[3] In analyzing arguable probable cause for Wertman's qualified immunity defense, we examine the same evidence under the same circumstances and evaluate "whether it was objectively reasonable for the officer to conclude that probable cause existed."  *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).  If an officer had probable cause, he or she also had arguable probable cause and is protected by qualified immunity.

[4] The evidence in this section is listed in the district court's opinion and is not meaningfully contested by the parties. Insofar as Stansbury claims that some of the documentation in the record is invalid or does not exist, such assertions do not constitute "a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

10

analyze: the shoplifter's use and possession of pristine Old Navy bags; Wertman's observations of Stansbury's behavior during his interview; his knowledge of Stansbury's previous larceny arrest; and similarities between Stansbury's handbag and the perpetrator's handbag.

The district court began its discussion by analyzing the evidence related to the videotape – including Wertman's identification of Stansbury in person, his colleagues' corroborating identifications of Stansbury based on her DMV photograph, and the videotape itself. The district court noted that the evidence was probative, but not sufficient, finding that nothing in it was so persuasive "that a jury would be unreasonable in concluding that the videotape was not 'sufficient to warrant a person of reasonable caution'" in concluding that Stansbury was the perpetrator. *Id.* (quoting *Jaegly*, 439 F.3d at 152). We do not disagree with the court here, but that does not end the inquiry. The district court noted that "[t]here are several instances on the videotape where the perpetrator's face appears with some definition," though the perpetrator's face did not appear to perfectly match Stansbury's DMV photo. *Id.* The visibility of the perpetrator on the tape makes Wertman's identification probative and allows the other officers'

11

identifications based on the tape to **contribute meaningfully** to Wertman's probable cause to arrest Stansbury.

After disposing of the videotape, the court proceeded to analyze the identifications made by Cirrincione and John at the police barracks. As an initial matter, the district court rightly condemned the use of a one-photograph array to confirm identity. *Id.* at *5 (decrying the absence of indicia of reliability spelled out in *Neil v. Biggers*, 409 U.S. 188, 198 (1972)). Showing suspects "singly to persons for the purpose of identification . . . has been widely condemned," even when done in person. *Stovall v. Denno*, 388 U.S. 293, 302 (1967), overruled on other grounds by *Griffith v. Kentucky*, 479 U.S. 314 (1987). The use of a single photograph of the suspect is not more reliable.

However, "absent circumstances that raise doubts as to the victim's veracity," a victim's identification is typically sufficient to provide probable cause. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (holding that a store clerk's description of an incident of shoplifting supported a finding of probable cause).[5]

---

[5] "Under New York law an identified citizen informant is presumed to be reliable." *Caldarola v. Calabrese*, 298 F.3d 156, 165 (2d Cir. 2002) (citing *People v. Hetrick*, 80 N.Y.2d 344, 349 (1992)). "We have endorsed a similar proposition." *Id.*

Wertman had no reason to doubt the honesty of either Cirrincione or John, each of whom made statements under penalty of perjury and lacked incentive to single out Stansbury as the perpetrator.[6]  Although Cirrincione's and John's identifications were too problematic alone to provide probable cause to arrest Stansbury, this flaw does not render the evidence non-probative.  "[E]vidence need not be admissible at trial in order to support a finding of probable cause."[7]  *Phillips v. Allen*, 668 F.3d 912, 915 (7th

---

(citations omitted).  The same rule applies to identifications of the perpetrator from photographic arrays.  *See, e.g., People v. Jones*, 2 N.Y.3d 235, 238 (2004).

[6] This Court affords greater weight when witnesses testify or swear "under threat of the criminal sanction for perjury." *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996).

[7] The district court, applying the factors set forth in *Neil v. Biggers*, 409 U.S. 188 (1972), determined that Cirrincione's and John's identifications lacked sufficient "indicia of reliability" to support probable cause to arrest Stansbury.  *See Stansbury v. Wertman*, No. 09-cv-04638-RJH, 2012 WL 183849, at *5-6 (S.D.N.Y. Jan. 24, 2012) (discussing "[1] the opportunity of [Cirrincione and John] to view the criminal at the time of the crime, [2] [Cirrincione's and John's] degree of attention, [3] the accuracy of [Cirrincione's and John's] prior description of the criminal, [4] the level of certainty demonstrated by [Cirrincione and John] at the confrontation, and [5] the length of time between the crime and the confrontation").  Although we agree with the district court that the identification procedures employed here were suggestive, *Biggers* concerns the admissibility of identifications at criminal trials, not whether an identification can support probable cause to arrest a suspect. Application of the *Biggers* framework requires the kind of hindsight that, while useful in determining whether evidence should be admitted at trial, is inappropriate when deciding whether a police officer had probable cause to arrest.  *See*

13

Cir. 2012) (interpreting *Illinois v. Gates*, 462 U.S. 213 (1983)). "[A]lthough not able to be used at his [criminal] trial, [victim's] identification of [the perpetrator] may properly provide a basis for probable cause to arrest him." *People v. Nelson*, 79 A.D.2d 171, 174 (N.Y. App. Div. 4th Dep't 1981) (Cardamone, *Justice*) (abrogated on other grounds by *People v. Cintron*, 199 A.D.2d 526 (N.Y. App. Div. 2d Dep't 1993)).

The shoplifter's Old Navy bags, which in the video appear never to have been unfolded or used, properly narrowed Wertman's investigation to the universe of people who may have visited an Old Navy shortly before the robbery. Wertman's discovery that unused bags were seen strewn on the floor at a nearby store 22 minutes before the robbery, around the time a "middle aged black woman" used Nicole

---

*Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012) ("Application of the *Biggers* framework is possible, however, only after evidence has been gathered and an adversarial hearing held."). For the purposes of determining whether an identification can support probable cause, the basic question is whether the identification procedure was "so defective that probable cause could not reasonably be based upon it." *Jenkins*, 478 F.3d at 93. Because there is no suggestion that Cirrincione or John was coerced into identifying the plaintiff, or that Wertman thought either witness had any motive to lie, we conclude that the identification procedures employed here – although highly improper – were not so flawed that they could not contribute to a finding of probable cause.  .

Stansbury's credit card at Old Navy, was undoubtedly relevant to assessing his probable cause determination. This circumstantial evidence that Stansbury may have had an opportunity to obtain unused Old Navy bags just prior to the shoplifting incident is probative as to the likelihood that she was the perpetrator.

When Wertman interviewed the Stansburys about their presence at Old Navy, he observed that Linda Stansbury was very nervous and evasive. Furthermore, Wertman noticed that Nicole tried to cover for her mother during the interview. A police officer's contemporaneously recorded observation that a suspect was evasive when questioned may be a significant factor in a probable cause determination. *See, e.g., United States v. Gagnon*, 373 F.3d 230, 238 (2d Cir. 2004).[8] "Courts consider several factors when determining [probable cause], including the defendant's excessive nervousness . . . and evasive or contradictory answers to questions." *People v. Kelley*, 306 A.D.2d 699, 700 (N.Y. App. Div. 3d Dep't 2003) *(cited approvingly by People v.*

[8] In another case, how much weight to give an officer's observations in this regard might depend in part on the officer's subjective mindset, even if such a mindset does not in itself determine the existence or absence of probable cause, but Wertman's mindset was not at issue in this case. *See Devenpeck v. Alford*, 543 U.S. 146, 153-154 (2004).

*Hall*, 10 N.Y. 3d 303, 321 (2008)).  Accordingly, the district court erred by failing to consider this interview in its probable cause analysis.

Other evidence tending to make it more likely that Stansbury was the Stop & Shop culprit included Wertman's knowledge of her 1997 arrest for grand larceny in White Plains and Wertman's comparison of her handbag to the perpetrator's handbag as observed on the video.  Though neither piece of information individually yields a significant step towards establishing probable cause, the district court should have considered both as part of the totality of circumstances.  Similarly, John's assertion that the perpetrator was 5'5" tall (in light of Stansbury's 5'9" stature) is part of the total mix of evidence necessary to properly evaluate Wertman's decision to arrest Stansbury.[9]

**B.    Probable Cause Under the Totality of the Circumstances**

The district court analyzed the evidence *seriatim*, finding that no piece of evidence was sufficient in itself

---

[9] Cirrincione claims that she identified various physical similarities between Stansbury and the perpetrator (sunken cheeks, hooded eyes, and other distinctive facial characteristics).  There is no evidence that she communicated these observations to Wertman; because they were not a factor in Wertman's decisions to arrest and prosecute Stansbury, we do not consider them.  *See Panetta*, 460 F.3d at 395.

16

to establish arguable probable cause. *Stansbury*, 2012 WL 183849, at *4-6. Although it adequately evaluated the pieces of evidence that it chose to consider, the district court erred insofar as it did not account for the evidence "on the totality of the circumstances." *Jenkins v. City of New York,* 478 F.3d 76, 90 (2d Cir. 2007) (citing *Brinegar v. United States,* 338 U.S. 160 (1949)).

The totality of the circumstances test is no mere formality; it may frequently alter the outcome of a case. "Those who do not take into account conditional probability are prone to making mistakes in judging evidence. They may think that if a particular fact does not itself prove the ultimate proposition (e.g., whether the [officer had probable cause]), the fact may be tossed aside and the next fact may be evaluated as if the first did not exist." *Al-Adahi v. Obama*, 613 F.3d 1102, 1105 (D.C. Cir. 2010).[10] "The significance of each [relevant] factor[] may be enhanced or

---

[10] This is precisely what the district court did in this case. *See, e.g., Stansbury*, 2012 WL 183849, at *4 ("the videotape was not sufficient to warrant a person of reasonable caution in concluding that Stansbury was the perpetrator") (internal citations omitted); *id.* at *6 (it would be "impossible for the Court to conclude that a jury would be unreasonable in concluding that Cirrincione's and John's identifications of Stansbury based on a single photo did not give Wertman probable cause"); *id.* n.3 ("the same logic also renders [other officers'] identification[s] insufficient to support probable cause").

17

diminished by surrounding circumstances." *Jenkins*, 478 F.3d at 90. Review for probable cause should encompass "plainly exculpatory evidence" alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest. *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta*, 460 F.3d at 395). A story is never a single chapter, it is the experience of the entire tale; the same is true of probable cause.

The district court looked to our efforts in *Jenkins v. City of New York* to support its determination.[11] In *Jenkins*, New York Police Department ("NYPD") detectives investigated a series of robberies and a homicide committed by the main perpetrator and an accomplice. 478 F.3d at 81. By tracing the first victim's stolen red Honda Civic, reportedly used in all subsequent crimes, the NYPD found Blyther, the perpetrator. When the police raided Blyther's apartment, they also found and arrested Jenkins; they contended that he resembled descriptions of Blyther's accomplice in that he was a black male. *Id.* at 82-84, 89. Three lineups were

---

[11] It comes as no surprise that the parties agree that *Jenkins* provides the template to resolve the matter; they, however, reach differing results.

18

conducted for one witness and two victims, all of whom identified Jenkins as Blyther's accomplice in his crime spree. *Id.* at 82. In one lineup, however, the witness was not permitted to leave without fingering one of the men. *Id.* at 83. Eight months later, Blyther named his actual accomplice – not Jenkins. *Id.* at 82-83. Some material facts - including Jenkins's behavior prior to arrest - were subject to genuine dispute.

This Court held that the officers developed probable cause only after the second and third identifications (which, though flawed, were procedurally superior to the first lineup). *Id.* at 93. The totality of the evidence available to the police at that time included: (1) Jenkins' presence in Blyther's apartment days after the crimes; (2) Jenkins' race and gender, which corresponded with the accomplice's race and gender; (3) a witness's coerced and therefore meaningless identification of Jenkins; and (4) two victims' identifications of Jenkins in subsequent "less than perfect" lineups. *Id.* at 90-93. Although the first three pieces of evidence were insufficient, all four combined established probable cause. *Id.* at 93.

The totality of evidence in this case exceeds the evidence the NYPD possessed in *Jenkins* following the third lineup.  Although the identifications from the photographic array in this case were less probative than even the two imperfect lineups in *Jenkins*, the evidence implicated Stansbury before any flawed identification.  Prior to the identifications, Wertman was aware that, 22 minutes before the shoplifting, a middle-aged black woman had used Nicole Stansbury's credit card at a nearby Old Navy and that new shopping bags were seen strewn on the floor near the exit of the store.  When questioned about her whereabouts that evening, Wertman observed that Stansbury was nervous and evasive.  Stansbury, moreover, had a previous arrest for a similar crime.

On top of the circumstantial evidence against Stansbury, five individuals (including three trained officers and two innocent victims with no alleged motive to lie, one of whom had training in facial identification) could not distinguish her from the perpetrator in admittedly flawed photographic arrays.  The two victims submitted sworn affidavits expressing no uncertainty that Stansbury was the perpetrator.  The fact that the victims did not offer timely

20

detailed descriptions of the perpetrator means that probable cause could not be based on Stansbury's matching these descriptions; it does not mean that the victims could not meaningfully identify Stansbury. The district court misstated the factual record in asserting that "the most the Court can say is undisputed is that Cirrincione and John told Wertman that the shoplifter was a black female who was wearing a maroon windbreaker and blue jeans." *Stansbury*, 2012 WL 183849, at *7. Such a description might, as the lower court suggested, be comparable to *Jenkins*; however, there is significantly more evidence here.

John's claim that the perpetrator was 5'5" tall is evidence indicating that Stansbury could be innocent, but this evidence was outweighed by the mountain of evidence to the contrary. *Boyd v. City of New York*, 336 F.3d 72, 74, 77 (2d Cir. 2003). In *Boyd*, the police had probable cause to make an arrest based on Boyd's purchase of a stolen car, even though the car did not "look stolen" and Boyd may not have known it was stolen. *Id.* (asserting, however, that there was not probable cause to support a prosecution). *Boyd* reaffirms that some exculpatory evidence does not make an arrest illegal when the totality of evidence still

establishes probable cause to believe that the suspect committed the crime. Such is the case here, where the only exculpatory evidence is a guess from a store employee as to the perpetrator's height that was off by four inches. This deficiency, if it was one, was overcome by other evidence, including a positive, sworn identification by the same employee.

Because there was an identifiable crime and a substantial volume of contemporaneously-recorded, uncontroverted circumstantial evidence that supported the conclusion that Stansbury was the perpetrator, Wertman had probable cause to arrest Stansbury. No reasonable juror could have held that Wertman did not have probable cause to believe that Stansbury had committed the larceny at the Stop & Shop.[12]

---

[12] While Wertman did have probable cause to arrest Stansbury, this does not mean that he conducted a perfect investigation. "Although a better procedure may have been for the officer[] to investigate [Stansbury's] version of events more completely, the arresting officer does not have to prove [a suspect's] version wrong before arresting [her]." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Perhaps Wertman should have been more thorough, but he did not "misrepresent[] the evidence to the prosecutors" and no evidence suggests that he broached protocol in any way other than the use of an inadequate photographic array. *Cf. Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010). This alone does not mitigate the probable cause that his investigation provided.

**III. Malicious Prosecution**

Because lack of probable cause is an element of a malicious prosecution claim, "the existence of probable cause is a complete defense to a claim of malicious prosecution." *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (alteration omitted) (quoting *Savino*, 331 F.3d at 72). The *presumption* of probable cause established by a grand jury indictment "may be rebutted ... by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* at 162 (alterations, citations, and quotation marks omitted). However, once probable cause has been established, it is impossible for plaintiff to prevail on a malicious prosecution claim as a matter of law. *See Savino,* 331 F.3d at 72.

The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases. *Boyd*, 336 F.3d at 76. "Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* For the reasons discussed above, the uncontroverted

23

evidence adduced in Wertman's investigation suffices to meet that standard.

As a matter of law, the uncontroverted facts in this case created probable cause to initiate Stansbury's prosecution for petit larceny; Wertman was therefore entitled to judgment as a matter of law.

## Conclusion

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott*, 550 U.S. at 380 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Ignoring frivolous allegations, the documented record establishes uncontroverted facts that, taken together, provided probable cause for the arrest and prosecution of Linda Stansbury. Officer Wertman is therefore entitled to judgment as a matter of law.

For the foregoing reasons, the opinion and order of the district court is **REVERSED,** and the case is **REMANDED** with instruction for the district court to grant Wertman's motion for summary judgment**.**