*Spagnuolo v. Howell, et al*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

 At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of May, two thousand twenty.

PRESENT: JON O. NEWMAN,
    JOSÉ A. CABRANES,
    PETER W. HALL,
      *Circuit Judges.*

―――――――――――――――――――――――

PETER V. SPAGNUOLO,

    *Plaintiff-Appellant,*      18-3180

    v.

KATHLEEN HOWELL, AS EXECUTOR FOR THE ESTATE
OF SHARON HUBBARD,
    *Defendant-Appellee,*

SUFFOLK COUNTY, SUFFOLK COUNTY POLICE
DEPARTMENT, RICHARD DORMER, FORMER POLICER
COMMISSIONER, DETECTIVE MARLENE TULLY,
DETECTIVE DENNIS MURPHY, JAMES RHOADS,
COMMANDING OFFICER, JOHN DOES NUMBERS, 1-5
THOSE OFFICERS BEING OFFICERS WHO ASSISTED IN
THE ARREST, INVESTIGATION, AND/OR PROSECUTION
OF PLAINTIFF, SUFFOLK COUNTY SHERIFF'S
DEPARTMENT,
    *Defendants-Cross-Defendants-Cross
    Claimants-Appellees,*

SHARON HUBBARD,
                    *Cross-Claimant-Cross-Defendant-Appellee,*

SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE,
THOMAS J. SPOTA, DISTRICT ATTORNEY,
                    *Defendants-Cross-Defendants,*

LAWRENCE OPISSO, ASSISTANT DISTRICT ATTORNEY,
COREY BONAVIA,
                    *Defendants.*

---

**FOR PLAINTIFF-APPELLANT:**                    Peter Spagnuolo, pro se, Mt.
                                                Kisco, NY.

**FOR DEFENDANT-APPELLEE:**                     Joseph De Donato, Morgan
                                                Melhuish Abrutyn LLP, New
                                                York, NY.

**FOR DEFENDANTS–CROSS-DEFENDANTS–**            Brian C. Mitchell, Assistant
**CROSS-CLAIMANTS–APPELLEES:**                  County Attorney, Suffolk
                                                County Department of Law,
                                                Hauppauge, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Appellant Peter Spagnuolo, a suspended attorney proceeding pro se,[1] appeals the District Court's judgment granting summary judgment in favor of the Defendants with respect to his 42 U.S.C. § 1983 and state-law claims. Spagnuolo sued Suffolk County (the "County"), its police department and sheriff's department, and several police officers (collectively, the "County Defendants"), and Sharon Hubbard in connection with his 2011 arrest for robbery.[2] Spagnuolo was arrested and charged with stealing a diamond ring from Hubbard at gunpoint, but the charges were dropped after

---

[1] As an attorney, Spagnuolo is not entitled to liberal construction of his brief. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 n.4 (2d Cir. 2001).

[2] Hubbard died during the pendency of these proceedings; Kathleen Howell, the executor of her estate, was substituted in her place.

Christopher Wolkoff, who had no connection to Spagnuolo, confessed to the crime. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment de novo, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

I.      *Abandonment and Waiver of Claims on Appeal*

As a preliminary matter, Spagnuolo does not challenge the District Court's dismissal of his slander and § 1983 claims against Hubbard, his emotional distress claims against Hubbard premised on her statements to a 911 operator, his battery and excessive force claims, and his claims against the police and sheriff's departments. He also does not address any claims arising under the New York Constitution. We therefore find these claims abandoned and decline to consider them. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92–93 (2d Cir. 1995). We also find that he abandoned his negligent infliction of emotional distress claim against Hubbard by failing to address the basis of the District Court's grant of summary judgment on that claim, which was his failure to establish that a special relationship existed between the parties. *See id.*

Additionally, we find that Spagnuolo waived his challenge to the District Court's dismissal of his § 1983 claim against the County for failure to present evidence of a custom or policy that caused his injury because it is insufficiently argued. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). His argument on appeal consists of a single conclusory sentence, and points to no evidence in the record of a County policy or custom of conducting identifications using improper procedures or inadequately training and supervising employees.

II.     *Claims Against County Defendants*

The remaining claims against the County Defendants are (1) Spagnuolo's § 1983 and state-law claims against police officers for false arrest, false imprisonment, and malicious prosecution, which the District Court dismissed on the basis of qualified immunity and (2) Spagnuolo's state-law claims against police officers for negligent and intentional infliction of emotional distress, slander, negligence, and recklessness, which the District Court dismissed as abandoned. These grounds for dismissal are addressed in turn.

3

A.     Probable Cause and Qualified Immunity

The District Court granted the County Defendants summary judgment on Spagnuolo's § 1983 and state-law false arrest, false imprisonment, and malicious prosecution claims against individual police officers on the grounds that the officers were entitled to qualified immunity because arguable probable cause existed at all relevant times.

Probable cause is a complete defense to a constitutional or New York tort claim for false arrest and false imprisonment, and continuing probable cause is a complete defense to a constitutional or New York tort claim for malicious prosecution. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Hernandez v. City of New York*, 100 A.D.3d 433, 433 (1st Dep't 2012). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Betts*, 751 F.3d at 82. "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013). Even where probable cause is lacking,

> a police officer is entitled to qualified immunity where (1) her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for her to believe that her actions were lawful at the time of the challenged act.

*Betts*, 751 F.3d at 82–83 (internal quotation marks and brackets omitted). Accordingly, to obtain summary judgment, it is only necessary for the defendants to show "arguable" probable cause—i.e. that reasonable officers could disagree about whether probable cause existed. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000).

Spagnuolo first argues that the District Court erred in holding that evidence suggesting that he was not the perpetrator was irrelevant to the existence of probable cause. He is correct that such evidence must be considered, because probable cause is evaluated "on the totality of the circumstances." *Stansbury*, 721 F.3d at 92 (quoting *Jenkins v. City of N.Y.*, 478 F.3d 76, 90 (2d Cir. 2007)). But although the District Court's statement that "[n]one of the cited discrepancies affect [its] probable-cause analysis" is ambiguous, it is best understood to mean that the District Court found that the totality of the evidence was sufficient to establish arguable probable cause notwithstanding the existence of the cited countervailing evidence.

Spagnuolo further argues that arguable probable cause did not exist because the officers knew that Hubbard's identification was unreliable and knew of other evidence suggesting that a different person had committed the robbery. At the time Spagnuolo was arrested and charged, the police knew that he had exchanged emails with Hubbard two days prior to the robbery to express interest in buying

4

a diamond ring, and Hubbard provided him with her phone number; the next day, a person using his name ("Pete") called Hubbard to arrange to buy a ring at her house; that person then robbed her; Hubbard identified Spagnuolo from a photo array immediately following the robbery; and Hubbard and a second witness both identified Spagnuolo from a subsequent lineup. As Spagnuolo emphasizes, the police also knew that Hubbard had corresponded with a "Pete" using a different email address at about the same time and again shared her phone number; a second witness failed to identify him from the photo array; a third witness (the only one who had not seen the photo array) failed to identify him from the physical lineup; and he was smaller and older than the witnesses' initial descriptions of the robber. At the time he was charged, Spagnuolo argues, the police knew that he had cooperated with the investigation in a manner suggesting his innocence.

Spagnuolo further argues that the identifications must have been improperly suggestive, and the detectives must have known them to be so because the detective who created the photo array was in the room during the initial identification, the identifications from the lineup were tainted by the photo array, and Spagnuolo's size and age were significantly different from that of the actual perpetrator. But, while Spagnuolo reasonably suspects that the identifications may have resulted from police error rather than another unfortunate coincidence, he concedes that any suggestion during the initial identification may have been inadvertent, and Hubbard maintained that the police had not encouraged her to identify him. Spagnuolo has no evidence that the detective who created the photo array participated in the initial identification or that reasonable officers would not have been able to disagree about the reliability of this identification.[3]

The investigation into the remaining evidence unquestionably could have been more thorough: prior to the arrest and charge, the officers had access to the same evidence that led the Suffolk County District Attorney's Office to identify Wolkoff as the perpetrator. "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Colon v. City of New York,* 60 N.Y.2d 78, 82 (1983)). But, given the strength of the evidence against Spagnuolo then known to the officers—i.e. the identifications, the recent email communications between Hubbard and Spagnuolo regarding the item that was stolen, and the perpetrator's use of the name "Pete"— there remained sufficient evidence for reasonable officers to disagree about the existence of probable cause. *See Stansbury*, 721 F.3d at 90 ("[A]bsent circumstances that raise doubts as to the victim's

---

[3] The lineup identifications may have been less probative of probable cause, since they were significantly later in time and the witnesses who identified Spagnuolo had already seen a photograph of him. *See United States v. Nolan*, 956 F.3d 71, 80 (2d Cir. 2020) (discussing research showing that these factors tend to undermine the reliability of identifications). But these, too, were at least arguably probative. The District Court found that the arrest occurred after the physical lineup, and Spagnuolo does not challenge that ruling.

veracity, a victim's identification is typically sufficient to provide probable cause." (internal quotation marks omitted)).

Accordingly, the District Court did not err in finding that there was no genuine dispute of material fact regarding the officers' entitlement to qualified immunity for the false arrest, false imprisonment, and malicious prosecution claims.[4] *See Martinez*, 202 F.3d at 634.

B.     Abandonment of Claims in the District Court

The District Court dismissed Spagnuolo's remaining state-law claims against police officers on the grounds that Spagnuolo abandoned these claims by failing to respond to the County Defendants' argument that they must be dismissed because he did not identify them in his Notice of Claim. *See* N.Y. Gen. Mun. § 50-e(1). Spagnuolo now argues that dismissal with prejudice was improper because the County Defendants' argument concerning the Notice of Claim was "hidden" and was not raised in their answer to his complaint. Spagnuolo is incorrect on both points. This argument was not "hidden": it comprised two full paragraphs of the County Defendants' memorandum in support of their motion for summary judgment. And the County Defendants raised this issue in paragraph 26 of their answer. Accordingly, the District Court did not err in concluding that Spagnuolo abandoned these claims. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to summary judgment] that relevant claims or defenses that are not defended have been abandoned.").

III.    *Claim Against Hubbard: Intentional Infliction of Emotional Distress*

Finally, the remaining claim against Hubbard is a state-law claim for intentional infliction of emotional distress. Under New York law, a claim for intentional infliction of emotional distress requires, inter alia, "extreme and outrageous conduct." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121–22 (1993) (stating that the conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). "A person may recover only where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation." *Owen v. Leventritt*, 174 A.D.2d 471, 472 (1st Dep't 1991) (internal quotation marks and citations omitted).

Spagnuolo argues that the evidence established that Hubbard acted outrageously by identifying him when she knew that she was being coached by detectives, conforming her statement regarding the perpetrator's car to match a car the detectives knew to be associated with Spagnuolo, changing

---

[4] Because the existence of arguable probable cause is dispositive, we do not reach the district court's alternative holding, with respect to Spagnuolo's malicious prosecution claim, that he failed to rebut the presumption of probable cause arising from his grand jury indictment.

her statement regarding a cigarette butt, and untruthfully telling the detectives that she had given her phone number only to Spagnuolo. But he has not identified any evidence that Hubbard took any step with the intent to harm Spagnuolo, whom she had never met prior to this litigation, and with whom she had no prior connection. Nor is there evidence that, if the identification procedures were suggestive, Hubbard was ever aware that she was being guided to identify Spagnuolo or describe the car he owned.[5] There is no evidence that Hubbard changed her statements regarding the cigarette butt: she at one point told the detectives that a cigarette butt outside her house likely belonged to the perpetrator; she was later told that it did not result in a DNA match to Spagnuolo, but there is no evidence that she made a different statement at that time, or that any change was an intentional misstatement intended to harm Spagnuolo. And while her statement to the police that she had provided her phone number only to Spagnuolo was inaccurate—she had also provided it to the actual perpetrator and published it in an online advertisement for the ring that was stolen—there is no basis to conclude that she intentionally misled the police, particularly since, by granting the police access to her emails, she presented them with evidence contrary to her inaccurate statement. The District Court therefore did not err in granting summary judgment to the executor of Hubbard's estate on Spagnuolo's intentional infliction of emotional distress claim.

## CONCLUSION

We have reviewed all of the arguments raised by Spagnuolo on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[5] To the contrary, we have acknowledged a large body of evidence connecting the unreliability of eyewitness identifications to unconscious psychological processes. *See Nolan*, 956 F.3d at 80 (noting that "the presence of a weapon" and "the stress of the situation" and "the witness's exposure to the defendant through multiple identification procedures" are all factors that have been shown to "impair the ability of a witness to accurately process what she observed" (brackets and ellipses omitted)).