*McGrier v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of February, two thousand twenty-one.

PRESENT:
>JOHN M. WALKER, JR.,
>ROBERT D. SACK,
>RICHARD J. SULLIVAN,
>>*Circuit Judges.*

_____

FREDDIE MCGRIER,

>*Plaintiff-Appellant*,

>v.                                                                          No. 19-2665

THE CITY OF NEW YORK, DEREK LYNTON, Assistant District Attorney, RAY VALERIA, Assistant District Attorney, DETECTIVE ROBERT HENN, Individually and in his

official capacity, DETECTIVE FELIX RAMOS, Individually, LIEUTENANT RICHARD GIBSON, CORRECTION OFFICER DANIEL ROBLES, Individually, Shield #13214, CAPTAIN JOHN THOMPSON, Individually, Shield #76, DETECTIVE/P.O. JOHN DOES #1-4, Individually and in their official capacity as New York City Police Officers, JOHN DOES #5-10, Individually and in their official capacity as New York City Correction Officers, THOMAS AASHEIM, Individually, Shield #1916, JOHN DOES #1-5, in their official capacity, CORRECTIONAL OFFICER JOHN DOES #1-5, ANTHONY D'AMATO, in his official capacity, JOSEPH CASTALDO, in his official capacity, JOHN CORDERO, in his official capacity, JOHN MOORE, Individually and in his official capacity,

*Defendants-Appellees.*[1]

_____

FOR PLAINTIFF-APPELLANT:     Freddie McGrier, *pro se*, New York, NY.

FOR DEFENDANTS-APPELLEES:     Richard Dearing, John Moore, *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY.

---

[1] The Clerk of Court is respectfully directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Freddie McGrier was arrested, indicted, and tried for a 2012 murder and robbery before ultimately being acquitted. From 2012 to 2015, he was incarcerated at Rikers Island Correctional Facility pending trial. On July 15, 2013, while housed in a solitary unit in punitive segregation, he placed his hands through the slot in the door to his cell and refused correction officers' orders to remove them. A team of correction officers then entered his cell and, McGrier claims, beat him even after he was handcuffed, causing permanent damage to his vision. In 2016, through counsel, McGrier sued the City of New York and several police and correction officers pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Specifically, McGrier asserted claims for malicious prosecution in connection with his 2012 robbery and murder prosecution, excessive force claims related to the July 15, 2013 cell extraction incident at Rikers Island, and municipal liability for the latter. The

district court granted Defendants-Appellees' motion for summary judgment as to all claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (internal quotation marks omitted).

**I.**   **Malicious Prosecution**

On appeal, McGrier first argues that the district court erred in dismissing his malicious prosecution claim against the police officer defendants. "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and

4

must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York.*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted). The elements of a malicious prosecution claim under New York law are "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id*. at 161 (internal quotation marks omitted).

"The existence of probable cause is a complete defense to a claim of malicious prosecution in New York, and indictment by a grand jury creates a presumption of probable cause. That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence[,] or other police conduct undertaken in bad faith." *Id*. at 161–62 (alterations, citations, and internal quotation marks omitted). "Officers have probable cause when they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (internal quotation marks omitted). In determining whether there was probable cause, we

must consider the totality of the circumstances, reviewing "plainly exculpatory evidence alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (internal quotation marks omitted). "[A]bsent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause." *Id.* at 90 (internal quotation marks omitted).

The district court correctly determined that the police officer defendants were entitled to judgment as a matter of law on this claim because no reasonable jury could find that McGrier's prosecution was not supported by probable cause. McGrier was indicted by a grand jury, creating a rebuttable presumption of probable cause. *Manganiello*, 612 F.3d at 161–62. One of the robbery victims also reviewed a photo array which included a photo of McGrier, and identified McGrier as the assailant. Even assuming the defendant police officers were sufficiently involved in "initiating" the prosecution, McGrier has not offered any evidence, aside from his own speculation, that the grand jury indictment was procured by fraud, perjury, suppression of evidence, or bad faith conduct. *See Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (stating that to rebut the

presumption of probable cause created by a grand jury indictment, "the plaintiff [must] establish what occurred in the grand jury, and . . . further establish that those circumstances warrant a finding of misconduct"). He cannot defeat a motion for summary judgment with "unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

## II. Excessive Use of Force on July 15, 2013

McGrier also argues that the district court erred in granting summary judgment on his excessive force claims against Correction Officer Daniel Robles and the City. The Fourteenth Amendment's "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (internal quotation marks omitted). Force is excessive if it is "objectively unreasonable" under the particular circumstances. *Id*. In determining whether, "from the perspective of a reasonable officer on the scene," the use of force was objectively reasonable, a factfinder may consider, among other things, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity

7

of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

It is clear from the record that there is a genuine dispute as to whether excessive force was used by some of the officers who entered McGrier's cell on July 15, 2013. The video of the incident shows the officers spraying a chemical agent into the cell, and appears to show an officer kicking McGrier while McGrier is on the floor. But the video does not fully resolve the factual disputes as to what force was used by the officers and whether it was "objectively unreasonable." Construing the evidence in the light most favorable to McGrier, it appears that he put his bare hands through the slot in his cell door and refused to remove them, pushed against the officers' riot shields for ten seconds as the officers attempted to enter his cell, and, while already on the floor with officers holding him down, put up some resistance to being handcuffed. As for the force used in response to those actions, McGrier testified that he was kicked and hit in the face with handcuffs while he was already handcuffed. The medical report indicates that McGrier had facial and orbital contusions immediately afterward, and McGrier testified that he has mild but permanent vision loss as a result of the incident.

But while there is some evidence to suggest that one or more of the individual officers applied excessive force against McGrier, the district court correctly determined that no reasonable jury could find Officer Robles or the City responsible for any excessive force that was used.

**A.     Robles's Liability**

To be found liable for excessive force, Officer Robles must have either used excessive force himself or failed to intervene, despite having a "realistic opportunity" to do so, to prevent another officer from applying excessive force. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).   Based on the evidence presented, no reasonable jury could find Robles directly responsible for applying unconstitutionally excessive force.   With respect to the spraying of the chemical agent into McGrier's cell, there is no evidence to suggest that Robles was involved in the decision to do so or that he played a role in executing the captain's order. As for the physical force used after the officers entered the cell, McGrier himself admits that he "could not point to a specific punch or kick thrown by defendant Robles."   Appellant's Br. at 31.

That leaves only the question of whether Robles had "a realistic opportunity to intervene to prevent the harm from occurring."   *Anderson*, 17 F.3d at 557.

9

Even assuming that the spraying of a chemical agent constituted excessive force – which is dubious, given the safety risk posed by an inmate's refusal to allow a cuffing port to close and McGrier's continued non-compliance despite an order to do so – McGrier offered no evidence suggesting that Robles had a realistic opportunity to intervene before the spraying occurred.

With regard to what occurred inside the cell, the video establishes that Robles was present and that he was tasked with securing McGrier's right arm during the cell extraction. But neither the video nor McGrier's testimony suggests that Robles was in a position to prevent other officers from striking McGrier's face and right eye in the fast-moving altercation that ensued. Put simply, no reasonable jury could conclude from this record that Robles had a realistic opportunity to intervene to prevent the use of force by other officers. We therefore conclude that the district court did not err in granting summary judgment in favor of Robles.

**B. The City's *Monell* Liability**

"Under the Supreme Court's decision in *Monell . . .* , local governments may be held liable in § 1983 actions" if a plaintiff can "show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom."

*Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) (internal quotation marks omitted). "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Id.* (internal quotation marks omitted). There are three elements to a *Monell* claim: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (internal quotation marks omitted).

Here, a reasonable jury could find the third element of McGrier's *Monell* claim satisfied, since, as discussed above, there is a genuine issue of material fact as to whether he was subject to constitutionally excessive force in this incident. However, to satisfy the remaining elements, a jury would have to find that there was a sufficiently widespread and persistent practice of using excessive force in cell extractions at Rikers so as "to imply the constructive acquiescence" of Department of Correction ("DOC") officials in July 2013, and that the City's failure to take action to remedy this custom before that date caused McGrier to be subjected to such force. *Id.* at 297–98 (internal quotation marks omitted). The

11

evidence, construed in the light most favorable to McGrier, is not sufficient to support a jury verdict in McGrier's favor on these elements.

McGrier testified that the force used against him that day was part of a predictable pattern and was consistent with his experiences in other cell extractions at Rikers. But the personal experiences that McGrier described in his deposition post-dated his July 2013 assault, and thus cannot establish a pattern that the City was aware of in July 2013. McGrier's other assertions as to what staff "always" did are too vague to show what was customary prior to July 2013.

And while the investigative report prepared by the Department of Justice in 2014 provides strong support for a claim that there was a custom of excessive force at Rikers prior to July 2013 as to adolescent inmates,[2] the report does not provide sufficient facts regarding what the City knew or should have known about adult inmates at Rikers prior to July 2013.

McGrier argues that litigation involving similar allegations was ongoing in *Nunez v. City of New York*, No. 11-cv-5845 (S.D.N.Y.), and that the City therefore had knowledge of such practices at Rikers Island in July 2013. But *Nunez* was still

---

[2] *See generally* DEP'T OF JUST., CRIPA INVESTIGATION OF THE NEW YORK CITY DEPARTMENT OF CORRECTION JAILS ON RIKERS ISLAND (Aug. 4, 2014), https://www.justice.gov/sites/default/files/usao-sdny/legacy/2015/03/25/SDNY%20Rikers%20Report.pdf.

in discovery in July 2013, and the eventual consent decree in that case, in which DOC agreed to implement reforms to reduce the use of force by officers, was not reached until 2015.[3]  McGrier's reliance on a *New York Times* article describing "pervasive and routine" violence by officers against inmates at Rikers is equally misplaced, since that article was not published until July 2014.[4]  In short, the record lacks sufficient evidence – from the City, DOC, or anywhere else – that would permit a reasonable jury to conclude that, in the time period leading up to July 2013, the City was on notice of a widespread and persistent practice of using excessive force in cell extractions of adult inmates at Rikers.  Accordingly, the district court did not err in granting summary judgment in favor of the City on McGrier's *Monell* claim.

**III.    Other Claims**

McGrier has waived any challenge to the district court's decision on his remaining claims by not discussing them in his brief.  *See* Fed. R. App. P. 28(a)(5)–(8); *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir. 1995) ("[W]e need not

---

[3] *See* Consent Judgment, *Nunez v. City of New York.*, No. 11-cv-5845, Dkt. No. 249 (S.D.N.Y. Oct. 21, 2015).

[4] *See* Michael Winerip & Michael Schwirtz, *Rikers: Where Mental Illness Meets Brutality in Jail*, N.Y. TIMES (July 14, 2014), https://www.nytimes.com/2014/07/14/nyregion/rikers-study-finds-prisoners-injured-by-employees.html.

manufacture claims of error for an appellant proceeding *pro se*, especially when he has raised an issue below and elected not to pursue it on appeal.").

We have considered McGrier's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court