23-7564-cv
*Alberty v. Hunter*

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
# 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔖𝔢𝔠𝔬𝔫𝔡 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

AUGUST TERM 2024

No. 23-7564-cv


WENDY ALBERTY,

*Plaintiff-Appellant,*


*v.*


ROBERT A. HUNTER, SERGEANT STEPHEN J. SAMSON, DANIEL DEPTULA,

*Defendants-Appellees.*



ARGUED: NOVEMBER 22, 2024

DECIDED: JULY 21, 2025



Before:      LIVINGSTON, *Chief Judge*, JACOBS, and MENASHI,
             *Circuit Judges*.


During a layover on an interstate bus trip, a passenger entered the luggage compartment to retrieve her cellphone charger—only to be locked in when the bus driver, Wendy Alberty, closed the compartment door on her.   The passenger called the police from the luggage compartment, and the police rescued the passenger and then arrested Alberty for reckless endangerment and breach of the peace. A charge of unlawful restraint was later added.   All charges were eventually dropped, and Alberty filed this action against three police officers for false arrest, malicious prosecution, and retaliatory prosecution, all based on lack of probable cause.   The district court

dismissed the driver's claims on summary judgment, holding that the officers had probable cause to arrest the driver and arguable probable cause to prosecute.

We affirm. The district court properly concluded that Defendants had probable cause to arrest Alberty. As to the remaining malicious and retaliatory prosecution claims, we affirm on the alternative ground that Defendants had probable cause to prosecute Alberty for reckless endangerment, breach of the peace, and unlawful restraint.

**AFFIRMED**.

NATHANIEL BABER, Aeton Law Partners LLP, Middletown, Connecticut, *for Plaintiff-Appellant*.

JANELLE R. MEDEIROS, Assistant Attorney General, for William Tong, Attorney General for the State of Connecticut, *for Defendants-Appellees*.

DENNIS JACOBS, *Circuit Judge*:

Wendy Alberty, a Peter Pan bus driver, sues three police officers who arrested and charged her following an incident in which she locked a passenger in a bus's luggage compartment. After police rescued the passenger, they arrested Alberty for reckless endangerment and breach of the peace. During processing, the police added a charge of unlawful restraint.

After all charges were dropped, Alberty filed this action against the three police officers under 42 U.S.C. § 1983 and Connecticut state law, alleging false arrest, malicious prosecution, and retaliatory prosecution for her exercise of First Amendment rights. The United States District Court for the District of Connecticut (Hall, *J.*) dismissed her claims on summary judgment, holding that the officers had probable cause to arrest Alberty and arguable probable cause to prosecute her.

For the reasons that follow, we affirm. As the district court held, the Defendants had probable cause to arrest Alberty based on

3

the evidence available at the time of arrest. As to the malicious and retaliatory prosecution claims, we affirm the dismissal on the alternative ground that Defendants had probable cause to prosecute Alberty for breach of the peace, reckless endangerment, and unlawful restraint.

**I**

The Bus Stop Incident. On August 4, 2019, Alberty was operating the first leg of a Peter Pan bus trip from Manhattan to Boston, with a brief stop in Hartford to change drivers. At Hartford, a passenger stepped off the bus and asked Alberty for permission to retrieve a cellphone charger from her bag, which was inside one of the luggage compartments under the bus. Alberty held the luggage compartment door open for her.

An acquaintance soon approached Alberty and placed his arm around her—blocking her view of the luggage compartment. The two talked and laughed for several seconds. During this exchange, and just a few feet away, the passenger climbed completely inside the

4

luggage compartment. As Alberty's acquaintance left, Alberty said, "Ha! Enjoy the ride!" and shut the luggage compartment door, locking the passenger inside. At this point, a second driver, Gary Jeanbaptiste, took over, and Alberty re-boarded the bus as a passenger.

After the bus left Hartford, the passenger called 911 from inside the luggage compartment. She exclaimed, "I'm not okay, the bus driver locked me under the bus." "I'm afraid . . . I don't know if she's ever going to let me out . . . please, I need help, no one knows where I am." The passenger added: "I'm so scared, please help!"

Defendant Trooper Hunter, on highway patrol, received notice from Dispatch. After seeing the Peter Pan bus go by, Trooper Hunter initiated a traffic stop and directed Jeanbaptiste to open the luggage compartments. The passenger then emerged, and explained that a woman, not Jeanbaptiste, locked her inside.

Jeanbaptise retrieved Alberty from the bus. The passenger "immediately identified" Alberty as the person who had locked her

5

under the bus, claiming, "[y]ou saw me, you laughed and shut the door!" Alberty exclaimed that she didn't know the passenger was in the compartment, but the passenger retorted, "yes, you did, you saw me!"

As Hunter began to investigate, Defendant Sergeant Samson arrived on the scene. Samson reminded Hunter that the Hartford Station likely had captured the incident on video. He directed Hunter to ask another trooper to "find out about the video." Hunter relayed the request to Dispatch.

The officers took statements from Alberty, the passenger, and Jeanbaptiste.

Alberty admitted that she had opened the luggage compartment for the passenger but explained to Trooper Hunter that she "didn't know [the passenger] was in there. [The passenger] told me that she was going to get something, [Jeanbaptiste] took over for 15 minutes, I came out and we [were] all on the bus." Alberty reiterated that she walked away for "ten or twelve minutes" when the

6

passenger entered the compartment, then came back and shut the door. But she admitted that, under Peter Pan's policy, she was not supposed to let passengers access the luggage compartment at the Hartford station.

Jeanbaptiste stated that before leaving the Hartford stop, Alberty "had already checked" the luggage compartment, and that Alberty was "responsible for this bus," and had to "make sure all the compartments are closed." He confirmed that it was Peter Pan policy that drivers do "not let passengers into the bays." and "usually only handle baggage during loading and unloading times."

The passenger reiterated her version of events. Alberty "knew I was under there and . . . laughed and shut the door," intentionally locking her under the bus. The passenger explained that the bus had left the Hartford station "[a]pproximately 5-6 minutes" after she was locked in the luggage compartment—not 15 minutes, as Alberty had claimed. The passenger also decided that she wanted to press charges.

Finding "no reason for [the passenger] to lie," Trooper Hunter and Sergeant Samson arrested Alberty on charges of reckless endangerment and breach of the peace. When offered the opportunity to give a custodial statement about the incident, Alberty chose not to do so without the presence of a lawyer.

The Video Footage. Around that time, Trooper Gonzalez arrived at the Hartford bus station to watch the surveillance footage. He told Dispatch that the incident "honestly does look accidental." While the passenger "was inside looking for her bag, [Alberty] looked away, she started talking to her friend. They start[ed] laughing, and then she went back to the compartment, and then closed it all up and just walked right back on the bus." He concluded that "[i]t looks like she either forgot or she just thought the person already . . . got the luggage and left." Only 21 seconds elapsed between the opening and closing of the compartment.

Dispatch called Samson, who was still at the scene. Samson learned that, based on the footage, Gonzalez thought the incident

8

"appears to be accidental." Dispatch gave Samson no other details, except for noting that Trooper Gonzalez was "a new guy."

The Police Station. While Hunter was processing Alberty, he too received a phone call informing him that Gonzalez, "the new kid," looked at the footage and thought it "clearly looks accidental." Hunter acknowledged the information, but he continued to process Alberty.

During Alberty's processing, Sergeant Samson discussed the arrest with his supervisor, Defendant Master Sergeant Deptula. Samson and Deptula testified that they do not recall Samson mentioning Trooper Gonzalez's opinion about the video during their discussion. After hearing Samson's summary of the incident, Deptula "asked [Samson] whether he felt [a charge of] unlawful restraint would also apply." Samson agreed and "relayed to Trooper Hunter that the charge of [u]nlawful [r]estraint should be added." The record reflects no further involvement by Master Sergeant Deptula. Trooper Hunter's report to the State's Attorney's

9

office included the unlawful restraint charge and advised that footage of the incident existed.

On December 15, 2019, the charges against Alberty were dismissed *nolle prosequi*. Until this litigation, neither Hunter nor Samson reviewed the station footage.

**II**

Alberty's amended complaint alleged § 1983 violations against Trooper Hunter, Sergeant Samson, and Master Sergeant Deptula. The district court granted the Defendants' motion for summary judgment, as follows:

- The false arrest claim was dismissed on the ground that probable cause existed at the time of arrest for reckless endangerment and breach of the peace.
- The malicious prosecution claim was dismissed on the ground that arguable probable cause existed for all three charges, notwithstanding the bus station video.

- The retaliatory prosecution claim—premised on the assertion that the unlawful restraint charge was added because Alberty refused to make a statement to the police without her lawyer—was similarly dismissed on the ground of arguable probable cause.

**III**

This Court reviews "a district court's grant of summary judgment *de novo*." *Kravitz v. Purcell*, 87 F.4th 111, 118 (2d Cir. 2023). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

The district court's grant of summary judgment to Defendants rested on a finding of probable cause as to the false arrest claims. But as to the claims of malicious prosecution and retaliatory prosecution, the court found no more than *arguable* probable cause—because by

then, the police officers (other than Deptula) knew of the video's existence and Trooper Gonzalez's opinion that the closing of the door appeared to be accidental. We agree with the first conclusion but disagree with the second to the extent that the district court thought probable cause had dissipated. For reasons explained below, we conclude that Defendants at all relevant times had probable cause to arrest and prosecute Alberty for breach of the peace, reckless endangerment, and unlawful restraint; and Trooper Gonzalez's opinion that the incident appeared accidental was insufficiently exculpatory to dissipate probable cause.

## A. False Arrest

Alberty argues on appeal that Defendants lacked probable cause to arrest her for reckless endangerment and breach of the peace due to their "failure to investigate and/or consider basic evidence available to them" at the time of arrest, *i.e.*, the video.

Courts should "generally look[] to the law of the state in which the arrest occurred" to determine the elements of a § 1983 claim for

12

false arrest. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) (applying Connecticut false arrest law). A "false arrest" is "the unlawful restraint by one person of the physical liberty of another." *Russo v. City of Bridgeport*, 479 F.3d 196, 204 (2d Cir. 2007) (quoting *Outlaw v. City of Meriden*, 43 Conn. App. 387, 392 (1996)). To prevail on a false arrest claim under Connecticut law, a plaintiff must establish that "(1) the defendant intentionally arrested [the plaintiff] or had [her] arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause." *Sharnick v. D'Archangelo*, 935 F. Supp. 2d 436, 443 (D. Conn. 2013) (quoting *Weinstock v. Wilk*, 296 F. Supp. 2d 241, 246 (D. Conn. 2003)). Accordingly, "a false arrest claim cannot lie when the challenged arrest was supported by probable cause." *Russo*, 479 F.3d at 203.

Under "both federal and Connecticut law, probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient

to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Zalaski v. City of Hartford*, 723 F.3d 382, 389–90 (2d Cir. 2013) (internal quotation marks and citation omitted). Probable cause is determined by "examin[ing] the events leading up to the arrest, and then decid[ing] whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks omitted). "[W]e consider the totality of the circumstances at the time of the challenged arrest[]." *Zalaski*, 723 F.3d at 393. Probable cause is a "fluid" standard that does not demand "hard certainties" or "mechanistic inquiries." *Id.* at 389 (first quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983), then quoting *Florida v. Harris*, 568 U.S. 237, 243–44 (2013)). "Review for probable cause should encompass 'plainly exculpatory evidence' alongside inculpatory evidence to ensure the court has a full sense of the evidence that led the officer to believe that there was probable cause." *Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (quoting *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012)).

14

Under Connecticut law, "[a] person is guilty of reckless endangerment in the second degree when he *recklessly* engages in conduct which creates a risk of physical injury to another person." Conn. Gen. Stat. § 53a-64 (emphasis added). Similarly, a person is guilty of breach of the peace in the second degree when a person, "with intent to cause inconvenience, annoyance or alarm, or *recklessly* creating a risk thereof, . . . [*inter alia*,] creates a public and hazardous or physically offensive condition by any act which such person is not licensed or privileged to do." *Id.* § 53a-181 (emphasis added). One acts "recklessly" when one "is aware of and consciously disregards a substantial and unjustifiable risk." *See id.* § 53a-3(13). "The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Id.*

When a crime entails mens rea, the police are afforded substantial latitude in determining probable cause. *See Zalaski*, 723 F.3d at 393. "Finely tuned standards such as proof beyond a

15

reasonable doubt or by a preponderance of the evidence . . . have no place in the probable cause decision"; rather, all that is required is "the kind of 'fair probability' on which 'reasonable and prudent people, not legal technicians, act.'" *Harris*, 568 U.S. at 243–44 (alterations omitted) (quoting *Gates*, 462 U.S. at 231, 235, 238); *see also id.* at 244 (describing probable cause as "practical," "common-sensical," "all-things-considered" standard for assessing probabilities in particular factual contexts).

Trooper Hunter and Sargeant Samson had probable cause to arrest Alberty for reckless endangerment and breach of the peace. There is no genuine dispute about the facts known to Hunter and Samson at the time of Alberty's arrest. Both were aware of the 911 call in which the victim stated, *inter alia*, "I'm not okay, the bus driver locked me under the bus," and "I'm afraid . . . I don't know if she's ever going to let me out." The passenger's predicament was confirmed when the bus was pulled over, the luggage compartment was opened, and the passenger came out. She promptly identified

Alberty, and told Trooper Hunter that Alberty had seen her enter the compartment and had "laughed and shut the door." Defendants had no reason to doubt the passenger's identification, as Alberty herself confirmed that she had opened the luggage compartment for the passenger and secured it before the bus left the station. This identification alone would be enough to provide Defendants with probable cause to arrest. *See Stansbury*, 721 F.3d at 90 ("[A]bsent circumstances that raise doubts as to the victim's veracity, a victim's identification is typically sufficient to provide probable cause." (internal quotation marks omitted)).

Probable cause was reinforced when Trooper Hunter took a statement from Jeanbaptiste, who said that Peter Pan company policy forbids drivers from letting passengers into the compartments, and that it was Alberty's responsibility to secure the compartments before the bus departed. This information—taken together with the passenger's account of the incident, her emergence from the luggage compartment, and her identification of Alberty—easily established a

17

"fair probability" that Alberty knew she had locked the passenger in the luggage compartment or "consciously disregard[ed] a substantial and unjustifiable risk" that she had done so.   Conn. Gen. Stat. § 53a-3(13).   And it is self-evident that locking someone in the luggage compartment of a moving bus creates a risk of physical injury.   There was therefore probable cause to believe that Alberty "recklessly engage[d] in conduct which create[d] a risk of physical injury to another person" by opening the compartment and enabling the passenger to enter, and closing it without checking to see that the passenger was out.   *Id.* § 53a-64.

For largely the same reasons, the Defendants had probable cause to arrest Alberty for breach of the peace.   At the time of the arrest, the Defendants had sufficient information to reasonably conclude that Alberty "recklessly create[ed]" a "public and hazardous or physically offensive condition" that she was "not licensed or privileged to do."   Conn. Gen. Stat. § 53a-181.

Alberty argues that probable cause dissipated by the

18

Defendants' failure to investigate the video when they became aware of it. We disagree. Although "an officer may not disregard plainly exculpatory evidence" in determining probable cause, *see Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006), officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Ricciutti v. N.Y. City Trans. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also Triolo v. Nassau County*, 24 F.4th 98, 107 (2d Cir. 2022) (stating that an officer "had no duty to seek . . . out" plainly exculpatory evidence). Plainly exculpatory evidence is evidence showing "a person cannot as a matter of law be guilty of a crime." *Garcia v. Does*, 764 F.3d 170, 184 (2d Cir. 2014).

Neither Trooper Hunter nor Sergeant Samson was aware of what the video showed until after Alberty was arrested, and their awareness that it existed pre-arrest was not "plainly exculpatory."[1]

---

[1] Alberty disputes that Defendants were unaware of the video's contents but cites no evidence in the record to contradict Sergeant Samson's testimony that he became aware of the video's contents at the scene only after Alberty had already been arrested. *See* Samson Decl. ¶ 16 ("After Ms. Alberty had been placed in custody by Trooper

19

Nor did they have a duty to further investigate the video before arresting Alberty, such as by waiting to arrest Alberty until they learned what the video showed.[2] "[P]robable cause does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the

Hunter and en route to Troop C, it was relayed to me that Trooper Gonzalez . . . viewed video of the incident . . . [and] opined that it appeared accidental.").

[2] Alberty relies on a Tenth Circuit case for the proposition that "when a videotape of the conduct at issue is both known and readily accessible to an officer investigating an alleged crime, the officer must view the videotape so as to avoid improperly delegating the officer's duty to determine probable cause." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1257 n.8 (10th Cir. 1998). But the Tenth Circuit has recently described this statement as "dictum" and explained that *Bapiste* turned on the specific facts of that case. *See Craft v. White*, 840 F. App'x 372, 376 (10th Cir. 2021). Indeed, the video here was not readily accessible at the time of arrest—Trooper Hunter and Sergeant Samson would have had to travel to the Hartford station to view it. And even if the video's *existence* was known to Hunter and Samson, we have never adopted a rule that officers must watch a video known to them before arresting a suspect. *See Walston v. City of New York*, 289 F. Supp. 3d 398, 414 (E.D.N.Y. 2018) ("[C]ourts in this Circuit have expressly held that police do not have to review surveillance video in order to establish probable cause."), *aff'd* 754 F. App'x 65 (2d Cir. 2019). We do not do so here either.

20

situation." *Fabrikant*, 691 F.3d at 214 (quoting *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989)). In any event, the video did not show plainly exculpatory evidence, *see infra* p. 26–27, nor should the police at the scene have expected it would do so. For these reasons, we affirm the dismissal of Alberty's false arrest claim.

## B. Malicious Prosecution

Alberty argues on appeal that Defendants had neither probable cause nor (as the district court found) arguable probable cause to prosecute her for breach of the peace, reckless endangerment, and unlawful restraint without first investigating the bus station video that was available to them. We disagree.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must . . . establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). A plaintiff in an action alleging malicious prosecution under Connecticut law must show "(1) the defendant initiated or continued criminal proceedings against

the plaintiff," (2) "the criminal proceeding terminated in favor of the plaintiff," (3) "the defendant acted without probable cause," and (4) "the defendant acted with malice."[3] *Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009) (per curiam) (quoting *McHale v. W.B.S. Corp.*, 446 A.2d 815, 817 (Conn. 1982)). The "existence of probable cause is a complete defense to a malicious prosecution claim." *Cornelio v. Connecticut*, 32 F.4th 160, 178–79 (2d Cir. 2022). And as described previously, police are afforded substantial latitude in determining probable cause in the context of mens rea crimes. *See Zalaski*, 723 F.3d at 393.

"[E]ven when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charge must be made apparent by the discovery of some intervening fact." *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)

---

[3] The parties do not dispute that the first two elements of malicious prosecution are established.

(quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *as amended* (May 21, 1996)).   That is what Alberty's malicious prosecution claim contends.   But, for reasons stated, Defendants had probable cause for reckless endangerment and breach of the peace, *see supra* pp. 17–21; and between the decision to arrest and the decision to prosecute, the only intervening datum that came available to Defendants was Trooper Gonzalez's opinion that the incident looked accidental in the bus station video.   This intervening evidence alone did not dissipate probable cause for any of the charges.   *Id.*

**Reckless Endangerment and Breach of the Peace.**   As to the charges of reckless endangerment and breach of the peace—for which a showing of recklessness is sufficient—Trooper Hunter and Sergeant Samson had enough evidence to conclude at a minimum that Alberty acted recklessly.   *See supra* pp. 17–21.   The opinion of Trooper Gonzalez confirmed that the event happened.   And his claim that it "appear[ed] accidental" is not inconsistent with recklessness, especially given Jeanbaptiste's statement suggesting that Alberty

23

violated Peter Pan's safety standards. *See State v. Edwards*, 214 Conn. 57, 65 (1990) ("To assert that something is an accident does not resolve the fact-bound question of whether that 'accident' was the result of criminally reckless or negligent conduct.").

**Unlawful Restraint.** Unlawful restraint "requires proof not only that the defendant actually restricted the complainant's movements in such a manner as to interfere substantially with her liberty, without her consent, but that [s]he did so intentionally, that is, with the 'conscious objective' of causing that result." *State v. Tony O.*, 211 Conn. App. 496, 516 (2022) (citing Conn. Gen. Stat. § 53a-3(11)).

At first glance, Gonzales's opinion—that the event "appear[ed] accidental"—undermines a finding of intentional misconduct. But probable cause is not thereby dispelled. Rather, the strength of the exculpatory evidence must be weighed against the totality of evidence supporting probable cause. *Stansbury*, 721 F.3d at 94; *Harris*, 568 U.S. at 244. There was sufficient evidence—including the statement that Alberty laughed as she locked the passenger away

24

after she had opened the luggage compartment, in violation of Peter Pan policy—to conclude that Alberty intended to do what the video confirmed she did. Trooper Gonzalez's opinion that the incident "appear[ed] accidental" is not "plainly exculpatory" evidence such as to make apparent the "groundless nature" of adding the unlawful restraint charge. *Lowth*, 82 F.3d at 571. This opinion, by a single inexperienced officer, was based on a snippet of video without sound. And because Gonzalez's opinion was transmitted to Defendants via intermediaries, Defendants did not have the detailed observations Gonzalez made to the intermediaries. *See Bhatia v. Debek*, 287 Conn. 397, 410 (2008) (clarifying that probable cause to prosecute is based on an officer's "*knowledge* of facts" (emphasis added) (citation omitted)). Defendants therefore reasonably concluded there was a "fair probability" that Alberty intentionally locked the passenger in the luggage compartment. *Id.* (quoting *Gates*, 462 U.S. at 239)).

Nor is the video itself "plainly exculpatory." The video shows no more than Alberty (i) opening the luggage compartment door for

25

the passenger, (ii) laughing with another individual, and (iii) closing the door with the passenger inside, all within a matter of seconds. In fact, the video refutes Alberty's statement that she walked away for "ten or twelve minutes" before closing the luggage compartment and confirms the passenger's account in two ways. First, the video shows that, in quick succession, Alberty opened the luggage compartment, laughed, and locked her inside. Second, the video shows that the bus departed only a few minutes after Alberty locked the passenger in the luggage compartment. While the overall impression of the video may be exculpatory, it also suggests that the passenger's account was the more reliable of the two. Thus, Defendants Samson and Hunter at all times possessed a reasonable basis for concluding that Alberty unlawfully restrained the passenger.

As to the third Defendant, Master Sergeant Deptula, the evidence is undisputed that he had no knowledge of the video's contents or of Trooper Gonzalez's opinion that the incident appeared

accidental. Alberty points to no record evidence that Deptula was made aware of Trooper Gonzalez's opinion before he recommended adding the unlawful restraint charge. Based on the information available to him, Deptula reasonably believed that probable cause existed to charge Alberty with unlawful restraint.

Because Defendants had probable cause to prosecute Alberty for all three charges—despite not having examined the Hartford station video—we affirm the judgment of the district court as to the malicious prosecution claims.

### C. Retaliatory Prosecution

Alberty alleges that Defendants added the unlawful restraint charge because she exercised her constitutional right to make no formal statement without the presence of a lawyer.

Retaliatory prosecution is a species of First Amendment retaliation claims. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). To survive a motion for summary judgment in the context of First

27

Amendment retaliation, including retaliatory prosecution, a plaintiff must proffer evidence to show that "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *see also Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). As is the case with malicious prosecution, a finding of probable cause will defeat a claim of retaliatory prosecution.[4] *See Hartman*, 547 U.S. at 265; *see also Mangino v. Incorporated Village of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015).

As explained above, probable cause existed to charge Alberty

---

[4] The Supreme Court has recognized an exception to this rule in the context of retaliatory arrest claims when a plaintiff produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 587 U.S. 391, 407 (2019). This is a "slim" exception, *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024), that does not apply to Alberty's claim.

with unlawful restraint and no "plainly exculpatory" evidence dissipated probable cause. *See supra* pp. 25–28. Alberty, therefore cannot make out a case for retaliatory prosecution, notwithstanding her exercise of constitutional rights.

## CONCLUSION

We have considered all of Alberty's remaining arguments and find them to be without merit.[5] Accordingly, Defendants had probable cause at all relevant times to arrest and charge Alberty for breach of the peace, reckless endangerment, and unlawful restraint. The judgment is **AFFIRMED.**

---

5 Alberty's brief gives no more than perfunctory treatment to a claim of unreasonable search and seizure. Issues not sufficiently argued in briefs are considered abandoned. *See Gerstenbluth v. Credit Suisse Sec. (USA) LLC,* 728 F.3d 139, 142 n.4 (2d Cir. 2013).